# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>**REMARKABLE HEALTHCARE OF CARROLLTON, LP,** *et al.*,[1]<br><br>DEBTORS | CASE NO. 18-40295-BTR<br><br>CHAPTER 11<br><br>JOINTLY ADMINISTERED |

### COMERICA BANK'S OBJECTION TO REMARKABLE DEBTORS' EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 363 FOR INTERIM AND FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Comerica Bank ("Comerica"), a secured creditor and party in interest, presents the following objection (the "Objection") to the *Remarkable Debtors' Emergency Motion Pursuant to 11 U.S.C. § 363 for Interim and Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "Motion") [Docket No. 12] filed by Remarkable Healthcare of Carrollton, LP, Remarkable Healthcare of Dallas, LP, Remarkable Healthcare of Fort Worth, LP, Remarkable Healthcare of Seguin, LP, and Remarkable Healthcare, LLC (collectively, the "Debtors"). In support of the Objection, Comerica respectfully states the following:

---

[1] The other debtors in these cases are (i) Remarkable Healthcare of Dallas, LP; (ii) Remarkable Healthcare of Fort Worth, LP; (iii) Remarkable Healthcare of Seguin, LP; and (iv) Remarkable Healthcare, LLC.

## Overview of Objection[2]

1. Since the entry of the Interim Order, the Debtors have failed or refused to comply with the terms of the Interim Order. The Debtors also firmly refuse to provide a budget for the continuing use of Comerica's Cash Collateral. Because the Debtors refuse to provide Comerica with even basic projections of future expenditures and earnings, Comerica: (i) cannot responsibly continue to consent to the Debtors' use of Comerica's Cash Collateral; and (ii) respectfully requests that this Court prohibit the Debtors' continued use of Comerica's Cash Collateral unless and until the Debtors and Comerica reach a consensual resolution. If a consensual resolution is not possible, the appointment of an examiner or a trustee may be appropriate in the immediate near term under the circumstances.

## Factual Background

2. On February 12, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-styled bankruptcy cases (the "Bankruptcy Cases"). The Debtors continue to operate and manage their business as "debtors in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in these chapter 11 cases pursuant to section 1104 of the Bankruptcy Code.

3. The Debtors are in the business of operating several skilled nursing facilities located in Carrollton, Dallas, Fort Worth, and Seguin, Texas. The Debtors' operations cater to (a) discharged hospital patients who require additional healthcare services before safely returning to their communities; and (b) individuals in need of long term healthcare services.

---

[2] Certain capitalized, undefined terms appearing in the Overview of the Limited Objection are defined later in the Objection. Also, all references to the "Bankruptcy Code" shall mean Title 11 of the U.S. Code. Similarly, references to the "Rules" shall mean the Federal Rules of Bankruptcy Procedure.

4. As of the Petition Date, the Debtors were indebted to Comerica under a prepetition credit facility (the "Prepetition Facility"). The Debtors' obligations under the Prepetition Facility are evidenced by the following loan documents (collectively, the "Prepetition Facility Documents"):

    a. Letter Agreement dated as of February 27, 2014 (as amended or otherwise modified from time to time) between Remarkable Healthcare, LLC and Comerica;

    b. Amended and Restated Master Revolving Note dated July 15, 2016 (as amended or otherwise modified from time to time) in the original principal amount of $3,000,000.00, executed by Remarkable Healthcare, LLC and payable to the order of Comerica;

    c. U.S. Small Business Administration Note dated February 6, 2013 (as amended or otherwise modified from time to time) in the original principal amount of $800,000.00, executed by Remarkable Healthcare of Dallas, L.P. and payable to the order of Comerica; and

    d. U.S. Small Business Administration Note dated April 28, 2014 (as amended or otherwise modified from time to time) in the original principal amount of $800,000.00 executed by Remarkable Healthcare of Carrollton, L.P. and payable to the order of Comerica.

5. The Prepetition Facility is secured by various instruments, assignments, and certificates, including UCC-1 financing statements, assignment of life insurance policies, and certificates of title lien notations, which were (a) filed of record in appropriate jurisdictions; and (b) granted Comerica first-priority senior liens and security interests (the "Prepetition Facility Liens") upon and in all personal property of each of the Debtors (the "Prepetition Facility Collateral"). By virtue of the Prepetition Facility Documents, Comerica asserts a lien on the Debtors' prepetition accounts receivable, all proceeds thereof, and the Debtors' bank accounts (collectively, the "Accounts"), which constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code. The Debtors' Accounts and the proceeds

from the Debtors' accounts receivable constitute cash collateral (the "Cash Collateral") pursuant to section 363(a) of the Bankruptcy Code.

6. On February 15, 2018, the Debtors filed the Motion, requesting interim and final approval from the Court for the Debtors' use of Comerica's Cash Collateral. The Motion was scheduled for an expedited hearing on February 21, 2018.

7. On February 21, 2018, the Debtors presented and the Court approved an agreed order in the form of the *Interim Order Authorizing the Debtors to Use Cash Collateral* (the "Interim Order") [Docket No. 35], authorizing the Debtors' limited use of Comerica's Cash Collateral during the period beginning on February 21, 2018 and ending on March 14, 2018 (the "Interim Period"). On the same date, the Court scheduled the final hearing on the Motion for March 5, 2018.

## Objection

8. Since the Debtors have failed to comply with the Interim Order, Comerica has no option other than to revoke its consent for the Debtors' use of Comerica's Cash Collateral.

### A. Legal Standard for the Use of Cash Collateral

9. Section 363(c)(2)(A) of the Bankruptcy Code allows a debtor to use cash collateral under the consent of the secured creditor. Permitting a debtor to use cash collateral pursuant to the consent of the secured party is routine relief.[3] Section 363(c)(2)(A) does not limit a secured creditor's ability to revoke its consent to the debtor's use of cash collateral.

10. Section 363(c)(2)(B) of the Bankruptcy Codes allows a debtor to use cash collateral under the authorization of an order from the presiding court. Provided that a court

---

[3] *See, e.g., In re Energy XXI LTD*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. April 15, 2016) (Docket No. 66); *In re Reddy Ice Holdings, Inc.*, No. 12-32249 (SGJ) (Bankr. N.D. Tex. April 13, 2012) (Docket No. 58).

authorizes the debtor to use cash collateral, section 363(e) of the Bankruptcy Code requires the debtor to provide the secured party with adequate protection against any diminution of value in such cash collateral. In the event that the debtor fails to provide such adequate protection, section 363(e) directs the presiding court to prohibit the debtor's use of the cash collateral.[4] Section 363(p)(a) of the Bankruptcy Code delegates to the debtor the burden of proof on the issue of adequate protection.

11. The Bankruptcy Code does not define the term "adequate protection" but does provide a non-exhaustive list of various forms of compensation that a debtor may provide to a secured creditor as adequate protection.[5] Ultimately, adequate protection serves the purpose of ensuring that the secured creditor's economic position does not deteriorate because of the debtor's bankruptcy case.[6] Adequate protection is determined by bankruptcy courts on a case-by-case basis.[7]

## B. The Debtors' Responsibilities under the Interim Order

12. The Interim Order includes several duties that the Debtors must satisfy to continue using Comerica's Cash Collateral. These duties are not onerous or punitive; rather, they focus the Debtors' attention on conserving cash flow and as importantly, providing transparency to the Debtors' primary secured creditors.

---

[4] Section 363(e) of the Bankruptcy Code states that such prohibition is mandatory, not precatory. *See* 11 U.S.C. § 363(e) ("[O]n request of an entity that has an interest in property used . . . the court, with or without a hearing, *shall* prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.").

[5] *See* 11 U.S.C. § 361 (providing that a debtor may grant replacement liens or cash payments in satisfaction of its obligation to provide adequate protection to a secured creditor).

[6] *See In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006).

[7] *See, e.g., Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994).

13. At Paragraph 5, the Interim Order terminates the Debtors' authorization to use Cash Collateral on the earlier of (a) March 14, 2018 (the "Termination Date"); or (b) the occurrence of an event described in Paragraph 6 of the Interim Order (each such event, a "Termination Event"). The first Termination Event listed in Paragraph 6 is the Debtors' violation of any term of the Interim Order.

14. The Interim Order includes several duties that the Debtors must satisfy to continue using Comerica's Cash Collateral. These duties include, but are not limited to, the following:

   a. Section 2 of the Interim Order requires the Debtors to cause their prepetition guarantors to deliver to Comerica signed financial statements and tax returns for the prior two years;

   b. Section 5 of the Interim Order requires the Debtors to submit a Subsequent Budget (as defined in the Interim Order), which must be approved by Comerica (similarly, section 14 of the Interim Order states that a Subsequent Budget must be delivered to Comerica on a weekly basis);

   c. Section 11 of the Interim Order requires the Debtors to deliver a deposit account control agreement to Comerica for each account that the Debtors use as a debtor in possession account that is not located at Comerica;

   d. Section 15 of the Interim Order requires the Debtors to deliver to Comerica a weekly Cash Reconciliation Report (as defined in the Interim Order); and

   e. Section 16 of the Interim Order requires the Debtors to provide Comerica with a full accounting of all transactions related to the Debtors' prepetition factoring agreements.

*C. The Debtors' Failures under the Interim Order*

15. The Debtors have failed to satisfy several of the several requirements under the Interim Order discussed in Paragraph 13, above. Moreover, despite the request of Comerica for

the Debtors to provide a thirty (30) day budget (in the form of a traditional thirteen (13) week cash flow forecast budget), the Debtors failed or refused to satisfy the most basic requirements of the Interim Order, namely providing Comerica with an acceptable Subsequent Budget.

16.   Comerica is particularly concerned by the Debtors' firm refusal to provide an acceptable Subsequent Budget. Whether the Debtors (a) cannot create an acceptable Subsequent Budget; or (b) will not create an acceptable Subsequent Budget, the message is clear: the Debtors do not intend to cooperate with their major secured creditor or comply with a fundamental tenet of the Bankruptcy Code — absolute transparency. In fact, the Debtors have provided Comerica with little more than a modicum of transparency both prepetition and now postpetition. Throughout discussions on what an acceptable Subsequent Budget should contain, the Debtors have steadfastly demanded that any forecast must be variable upon the number of patients that seek the services of the Debtors' business operations. Similar to all other healthcare service proceedings that Comerica's counsel has identified, the Debtors must provide a more transparent and accurate Subsequent Budget. Without forecasts based on weeks (not patient days), the Debtors will not be able to demonstrate to Comerica or the Court whether the Debtors' business operations are improving or faltering.

17.   The Debtors' refusal to provide traditional information continues a trend of obfuscation that the Debtors started prior to the Petition Date. Throughout 2017, the Debtors refused to provide standard reporting information to Comerica and its professionals. Comerica was hopeful that these efforts would end after the Debtors filed petitions for relief under the Bankruptcy Code; however, the Debtors have refused to change their course of secrecy and non-compliance.

18. Because of the Debtors' continuing failure to provide a Subsequent Budget, as well as the Debtors' failure to (a) cause their principals to deliver financial statement and tax returns; (b) deliver deposit account control agreements to Comerica; (c) deliver Cash Reconciliation Reports to Comerica; and (d) deliver records of all transactions related to the unauthorized prepetition factoring of Comerica's Prepetition Facility Collateral, the Debtors have provided Comerica with no option other than to revoke consent for the Debtors' continued use of Cash Collateral.

### *D. The Debtors Cannot Satisfy 11 U.S.C. § 363(e)*

19. To prevail on a contested motion to use Cash Collateral, the Debtors must show that they have provided Comerica with adequate protection. The Debtors do not have the financial wherewithal to provide Comerica with adequate protection for the use of Cash Collateral. At the time of this Objection, Comerica's claim on account of the Prepetition Facility may exceed the value of the Prepetition Facility Collateral and the Debtors' unencumbered assets.[8] Therefore, the Debtors do not have any means of providing Comerica with adequate protection through replacement liens. Similarly, Comerica's Prepetition Facility Liens encumber all of the Debtors' Cash Collateral. Therefore, the Debtors have no unencumbered cash available to make periodic payments to Comerica. Finally, Comerica does not believe that an "equity cushion" exists for any of the Prepetition Facility Collateral; accordingly, Comerica is not adequately protected by an "equity cushion."

---

[8] Comerica has significant concerns with the Debtors' estimates of their accounts receivable: *first*, it is unclear what rates the Debtors used to record the Medicare accounts receivable (Medicare rates or private pay rates); *second*, several Medicare accounts have not been promptly paid (such Medicare accounts are often never collected); *third*, several private pay accounts have not been collected within the standard 90 days (such private pay accounts are often collected only at steep discounts); and *fourth*, the Debtors have failed to provide any evidence to substantiate their claims that the Debtors have a valid $1.5 million account receivable owing by Medicare.

### *E. The Court Should Immediately Prohibit the Debtors' Use of Cash Collateral*

20. Because the Debtors (a) no longer have Comerica's consent to use Cash Collateral; and (b) have not and cannot provide Comerica with adequate protection, this Court should immediately prohibit the Debtors from continuing to use Comerica's Cash Collateral.

### **Reservation of Rights**

21. Comerica reserves all rights under the Prepetition Facility Documents, the Bankruptcy Code, and other applicable law with respect to, without limitation, Comerica's liens on the Debtors' personal property, including the value of the same, Cash Collateral, adequate protection, and the amount, validity, or priority of any claims against the Debtors. Comerica also reserves the right to amend or supplement this Objection at any time prior to any hearing to consider the Motion and to assert further arguments as the evidence may allow.

### **Prayer**

Comerica respectfully requests that this Court (i) deny the Motion; and (ii) grant Comerica such other and further relief as is appropriate and just under the circumstances.

**DATED:  March 2, 2018**

        **WINSTEAD PC**

        */s/ Devin B. Hahn*
        Joseph J. Wielebinski
        SBT No. 21432400
        Devin B. Hahn[9]
        SBT No. 24104047
        500 Winstead Building
        2728 N. Harwood Street
        Dallas, Texas 75201
        (214) 745-5400 (Telephone)
        (214) 745-5390 (Facsimile)

        **ATTORNEYS FOR COMERICA BANK**

**Certificate of Service**

I hereby certify that on March 2, 2018, a true and correct copy of the foregoing document will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District. Additionally, on March 2, 2018, a true and correct copy of the foregoing document will be sent to the parties listed on the Debtors' Service List filed at Docket No. 6 via first class, U.S. mail.

        */s/ Devin B. Hahn*
        One of Counsel

---

[9] Resident in Winstead PC's Houston office at 600 Travis Street, Suite 5200, Houston, Texas 77002.