UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REMARKABLE HEALTHCARE OF | § | CASE NO. 18-40295 |
| CARROLLTON, LP, *et al.*, | § | |
| | § | CHAPTER 11 |
| | § | |
| DEBTOR. | § | JOINTLY ADMINISTERED |

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION'S
OBJECTION TO DEBTORS' MOTION TO WAIVE
<u>APPOINTMENT OF A PATIENT CARE OMBUDSMAN</u>**
**(Relates to Docket No. 51)**

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

The Texas Health and Human Services Commission ("<u>HHSC</u>"), by and through the Texas

Attorney General's Office, files this Objection to Debtors' Motion to Waive Appointment of a

Patient Care Ombudsman (the "<u>PCO Motion</u>") (Docket No. 51). HHSC asserts that the Court

should not waive the Patient Care Ombudsman ("<u>PCO</u>" or "<u>Ombudsman</u>") requirement in these

cases for the reasons set forth below and requests that the Court direct the United States Trustee to

appoint a PCO as contemplated by 11 U.S.C. § 333.

## I.     <u>OVERVIEW</u>

1.     To protect the interests of the Debtors' residents as Congress intended, HHSC

respectfully contends that the appointment of a PCO is necessary in these cases to monitor the

quality of resident care and to represent the interests of the Debtors' residents, and therefore the

Court should not waive the PCO requirement.  The Debtors argue that "the appointment of an

ombudsman is unnecessary because (i) the appointment would be redundant to state inspections

and controls already in place; and (ii) Debtors already maintain a high-level of patient care and

have achieved excellent reviews and ratings from the State in prior inspections; and (iii) the

excessive costs associated with the appointment of an ombudsman would be deleterious to the Debtors' reorganization efforts." *See* PCO Motion, ¶ 9. However, HHSC, as the Debtors' regulator in the State of Texas, believes that the appointment of a PCO to protect the Debtors' residents is both necessary and appropriate as set forth below. Recognizing the need to protect the rights of patients when their caregiver enters bankruptcy, Congress mandates a PCO in all healthcare business cases, unless the debtor can establish that a PCO is not necessary. In the instant case, the Debtors' duty to their residents is now shared with their duty to maximize the value of the bankruptcy estate for creditors, which creates an inherent conflict. The Debtors' continued duty to the welfare of their residents while in bankruptcy was clearly mandated by Congress when it passed Section 333 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Congress was well aware when it passed Section 333 that virtually every "health care business" was regulated and yet the clear statutory language provides no such exception to the appointment of a PCO based upon such regulation. Given the fact that it is the Debtors' own regulators who strongly urge the appointment of a PCO, the Debtors' arguments about regulation being a substitute for a PCO should also prove unpersuasive and the Court should appoint a PCO to monitor the quality of resident care and to represent the interests of the Debtors' residents as contemplated by Section 333 of the Bankruptcy Code.

2.    In this case, should the Court order the appointment of a PCO pursuant to Section 333 and subject to formal appointment by the Office of the United States Trustee, Ms. Patty Ducayet, the Texas State Long-term Care Ombudsman, has agreed to serve as the Patient Care Ombudsman. *See* 11 U.S.C. § 333(a)(2)(B).[1] Her appointment as PCO would eliminate any

---

[1]    Section 333(a)(2)(B) provides that "[i]f the debtor is a health care business that provides long-term care, then the United States trustee may appoint the State Long-Term Care Ombudsman appointed under the Older Americans Act of 1965 for the State in which the case is pending to serve as the ombudsman required by paragraph (1)."

argument or concerns regarding "excessive costs" negatively impacting the Debtors'
reorganization efforts.  Accordingly, HHSC respectfully requests that the Court deny the PCO
Motion and enter an order directing the Office of the United States Trustee to appoint a patient
care ombudsman pursuant to Section 333 of the Bankruptcy Code.

## II.      BACKGROUND

3.      On February 12, 2018 (the "Petition Date"), the Debtors each commenced a case
under chapter 11 of the Bankruptcy Code and on February 21, 2018 the Court entered an order
directing joint administration of the bankruptcy cases.

4.      The Debtors operate four skilled nursing facilities located in Carrollton, Dallas,
Fort Worth and Seguin, collectively providing services to "hundreds of resident patients" across
their four locations.  *See* PCO Motion at ¶ 5.  The Debtors state that they provide care to residents
requiring healthcare services after hospital stays to help such individuals return home to the
community, as well as long-term services for those individuals who require extended care.  *Id.*

5.      On February 15, 2018, the Debtors filed an Emergency Motion for Authority to
Implement procedures to Protect Confidential Resident Information seeking to file a "separate
creditor matrix solely for the Residents" of the Debtors' facility.  *See* Emergency Motion for
Authority (Docket No. 11).

6.      In accordance with Chapter 242 of the Texas Health and Safety Code, HHSC
adopted minimum standards under the Texas Administrative Code that the Debtors must comply
with in order to retain its licenses to operate as a convalescent and/or nursing facility.  At a
minimum, each nursing facility must provide quality of life to each of its residents, including
access to care, continuity of care, comprehensiveness of care, coordination of services,
humaneness of treatment, conservatism in intervention, professionalism of caregivers,

participation in useful studies and safety of the residents' environment, pursuant to TEX. HEALTH & SAFETY CODE § 242.001(a). A violation of this minimum acceptable level of care is forbidden by law. *Id.*

7.     HHSC, as the regulatory agency of the Debtors' nursing facilities licenses, disagrees with the Debtors' contention that the appointment of a Patient Care Ombudsman is unnecessary to represent the interests of the Debtors' residents in this case because the rights of the vulnerable adults that reside in the Debtors' facilities are independent rights that may be adversarial to the Debtors' business interests. Indeed, such residents represent a population that is particularly vulnerable to even a brief interruption in the provision of quality care. A resident is dependent on the services provided by the nursing facility 24 hours a day/7 days a week as long as the resident stays at the facility. Each resident has (or should have) a plan of care that must be adhered to by the facility staff. Residents must receive, at a minimum, the following:

- Food that is compliant with the resident's individual dietary needs;
- Shelter which is safe and clean;
- Daily hygiene to include oral care and bathing;
- Toileting to include assistance with the use of facilities and protective garments if the resident is incontinent;
- Laundry services for both bedding and personal clothes;
- Physical, occupational and speech therapy;
- Medications;
- Wound care;
- Medical treatment to include access to a medical provider and emergency medical care;
- Nursing care and assistance;
- Mobility assistance;
- Entertainment to include interaction with the community;
- Personal mail delivery;
- Safe keeping of personal funds and property;
- Maintenance and safekeeping of medical treatment records;
- Access to visitors; and
- Privacy.

8.    HHSC is also concerned that the Debtors may not be in compliance with its licensure requirements, by failing to maintain sufficient financial resources to satisfy obligations which relate to the delivery of essential care to its residents.  40 TEX. ADMIN. CODE § 19.1925(a). In the lists of 20 largest unsecured creditors filed by the operating Debtors, the parties disclosed rent arrearages with its respective building owners for all four nursing homes: (1) back rent owed at Carrollton of $544,807.93; (2) back rent owed at Dallas of $278,420.92; (3) back rent owed at Fort Worth of $373,022.36 and (4) back rent owed at Seguin of $308,162.13.  In the event of a shutdown, emergency relocation of all nursing residents by the State would be required and HHSC would suspend the nursing facilities licenses by seeking approval of the Executive Commissioner of HHSC or, in the alternative, a court order, pursuant to TEX. HEALTH & SAFETY CODE § 242.062.

9.    The Debtors concede that the four nursing facilities are each a "health care business" as defined by 11 U.S.C. § 101(27A) and set forth in 11 U.S.C. § 333, but by the PCO Motion have requested that the Court find that the appointment of a patient care ombudsman is not necessary under the specific facts of this case.  HHSC disagrees and asserts that residents in long-term nursing facilities such as those operated by the Debtors are individuals most in need of an independent advocate, and as set forth in detail above are dependent on the Debtors for continuing daily needs as well as medical care required by the Debtors' resident population.  For the reasons set forth below, respectfully requests that this Court deny the Motion and direct the United States Trustee to appoint a Patient Care Ombudsman pursuant to 11 U.S.C. § 333.

## III.    ARGUMENT

10.    Section 333 of the Bankruptcy Code mandates the appointment of a Patient Care Ombudsman to "monitor the quality of patient care and to represent that interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not

Case 18-40295    Doc 56    Filed 03/08/18    Entered 03/08/18 16:17:32    Desc Main
Document      Page 6 of 14

necessary for the protection of patients under the specific facts of the case." 11 U.S.C. § 333(a)(1).

In enacting Section 333, Congress addressed the need to protect patients in cases involving health

care business since such patients do not otherwise have a voice to protect themselves should they

be faced with a diminished quality of patient care in bankruptcy.  Indeed, the PCO "serves as a

'patient advocate' – one who can speak for the consumers of the health care business's services

who might have different interests then [sic] those of the health care business's creditors –

monitoring the quality of patient care, representing the interests of patients and reporting to the

bankruptcy court every 60 days on the status of patient care in the debtor's health care business."

3 COLLIER ON BANKRUPTCY ¶ 333.01 at 333-3 (Alan N. Resnick and Henry J. Sommer eds., 16th

ed. 2017) (citing Bankruptcy Reform Act of 1999, 145 Cong. Rec. S14,052-14,059, 106th Cong.

(1st Session, 1999) (remarks of Senator Leahy on prior Senate bill with similar provisions: "[This]

amendment establishes an ombudsman to provide a voice for all health care patients, making sure

that judges are well aware of all the facts in balancing the interests between the creditor and the

patients.")).

11.    To obtain a waiver of the mandatory PCO appointment, a party-in-interest must

move for waiver of the requirement not later than 21 days after the commencement of the case.

FED. R. BANKR. P. 2007.2. In the instant case, the burden is on the Debtors to show that the

appointment of a PCO is not necessary for the protection of patients being treated in the Debtors'

nursing facilities.  *See In re Starmark Clinics, LP*, 388 B.R. 729, 735 (Bankr. S.D. Tex. 2008)

("[W]ere the case to continue in Chapter 11, the court would find that there has been an insufficient

showing that appointment of an ombudsman is not necessary for the protection of patients . . . .").

The movant must then provide specific evidence for the court to decide whether the facts warrant

waiving the appointment of a PCO as required by Section 333 of the Bankruptcy Code.  3 COLLIER

ON BANKRUPTCY ¶ 333.02[2] at 333-5 (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2017).

**A.      The Appointment of a PCO is Necessary in the Instant Cases to Represent the
Interests of Patients.**

12.      HHSC submits that the appointment of a PCO is required by 11 U.S.C. § 333 for

the protection of the Debtors' patients requiring round-the-clock care, and the Debtors cannot meet

their burden of showing that the appointment of a PCO is not necessary for the protection of such

patients.  Courts that have considered whether to waive the PCO requirement have looked at the

totality of the circumstances and considered the following non-exclusive list of factors:

> (1) the cause of the bankruptcy; (2) the presence and role of licensing or
> supervising entities; (3) debtor's past history of patient care; (4) the ability
> of the patients to protect their rights; (5) the level of dependency of the
> patients on the facility; (6) the likelihood of tension between the interests
> of the patients and the debtor; (7) the potential injury to the patients if the
> debtor drastically reduced its level of patient care; (8) the presence and
> sufficiency of internal safeguards to ensure appropriate level of care; and
> (9) the impact of the cost of an ombudsman on the likelihood of a
> successful reorganization.

*In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007).  Courts weight factors

five, "the level of dependency of the patients on the facility," and seven, "the potential injury to

the patients if the debtor drastically reduced its level of patient care," heavily in favor of the

appointment of an ombudsman.  *Id.* at 760; *In re Valley Health System*, 381 B.R. 756, 763-64

(Bankr. C.D. Cal. 2008).  Other factors courts consider include:

> (1) the high quality of the debtor's existing patient care; (2) the debtor's
> financial ability to maintain high quality patient care; (3) the existence of
> an internal ombudsman program to protect the rights of patients, and/or
> (4) the level of monitoring and oversight by federal, state, local, or
> professional association programs which renders the services of an
> ombudsman redundant.

*In re Valley Health System*, 381 B.R. 756, 761 (Bankr. C.D. Cal. 2008).

13.     Additionally, at least one bankruptcy court has considered the United States Trustee's position helpful in reaching a decision on whether the appointment of a PCO is unnecessary. *In re North Shore Hematology-Oncology Assoc.*, 400 B.R. 7, 11 (Bankr. E.D. N.Y. 2008) ("Helpful to this Court's consideration is the position of the UST that appointment did not appear necessary at this time.").

14.     Contrary to the instant case, the majority of cases allowing waiver of the PCO requirement involve situations where the debtor has ceased operating or only offered outpatient health care services. *See North Shore Hematology-Oncology*, 400 B.R. at 11 ("The fact that Debtor does not provide any in-patient services at any of its facilities holds substantial significance in this Court's decision"); *In re Medical Assocs. of Pinellas, L.L.C.*, 360 B.R. 356, 361 (Bankr. M.D. Fla. 2007) ("Under the facts of this case, the Court finds that there would be no need for the protection of patients given that the Debtor, as the administrative support to its member physicians, has ceased doing business and no longer provides even administrative support or lab services to those doctors."); *In re Banes*, *D.D.S. P.L.L.C.*, 355 B.R. 532, 536 (Bankr. M.D. N.C. 2006) (granting waiver of the PCO requirement where the debtor had ceased operating, patient records were protected, and the estate had no assets to pay a PCO).[2]

15.     In cases such as this, where the Debtors operate four nursing home facilities with in excess of 300 residents requiring 24-hour care potentially for the duration of residents' lives, HHSC respectfully contends that a PCO is necessary and the Court should not waive the requirement. *See, e.g., In re Barnwell County Hospital*, No. 11-06207-DD, 2011 WL 5443025 at *4 (Bankr. D.S.C. Nov. 8, 2011) (finding the appointment of a PCO unnecessary because of small

---

[2]         *See also In re RAD/ONE, P.A.*, No. 08-15517-NPO, 2009 WL 467286 at *2 (Bankr. N.D. Miss. Feb. 24, 2009) ("The Debtor has established that it provides only outpatient care, which lessens the need for the appointment of a PCO to insure a continuity of day-to-day care for patients."); *In re Genesis Hospice Care LLC*, No. 08-15576-NPO, 2009 WL 467265, at *2 (Bankr. N.D. Miss. Feb. 24, 2009) (same).

size of debtor and short length of inpatient stay).  HHSC, as the very agency that regulates the Debtors' facilities in Texas, believes that nursing facilities such as those operated by the Debtors demand the appointment of a PCO more so than other facilities, because they provide health care services 24 hours a day, seven days a week, as long as a resident lives at one of the Debtors' homes. In short, such individuals are placing their well-being in the hands of the Debtors' staff for potentially the remainder of their lives.  The type of medical care provided to these individuals, as well as the constant and ongoing nature of such care, dictate that the residents will benefit from the presence of an independent advocate whose duty is to monitor the quality of care provided by the Debtors and represent the interests of such individuals.  The risk to such patients should there be even a slight decrease in the quality of patient care is enormous, and thus this is precisely the type of case that Congress contemplated in enacting 11 U.S.C. § 333 for the protection of patients in bankruptcy cases involving a health care business.

16.    This Court has the discretion to (and should) place great weight on the patient-centric factors from *Alternate Family Care* and *Valley Health System* and refuse to waive the PCO requirement, particularly when the type of care and the type of patients at issue are closely considered.  Failure to order the appointment of a PCO, and the attendant risk to patients in the greatest need of someone to monitor the quality of patient care (as those in the care of these Debtors), would fly in the face of Congress's intent in enacting the Code's provisions regarding the appointment of a PCO.  HHSC thus respectfully requests that the Court deny the Debtors' PCO Motion.

**B.      The Alternate Family Care and Valley Health System Factors Must Be Read In Conjunction with Congressional Intent in Enacting the Bankruptcy Code's Patient Care Ombudsman Provisions.**

17.      In 2012, United States Bankruptcy Judge Jeff Bohm published an article[3] in the Uniform Commercial Code Law Journal, which argues:

> [C]ourts frequently ignore the statutory presumption that a PCO must be appointed when a health care business files for bankruptcy by placing significant weight on factors such as the existence of internal safeguards and financial burden imposed on the bankruptcy estate, and by treating factors that weigh in favor of the appointment of a PCO as *de minimis*.

The article continues by arguing that the "order of priorities seems to conflict with Congressional intent to elevate the interests of patients over *all* competing factors."

18.      In the article, Judge Bohm argues that some debtors (like the Debtors in this case) contend that a PCO is unnecessary because the "bankruptcy filing does not adversely affect the quality of the patient care that was being provided pre-petition."  In response, the article points out that "[p]atient care issues can occur at any time," *id.*, regardless of the periodic monitoring of patient care by the regulating agencies.  Therefore, "courts should not accord significant weight to pre-petition quality of patient care when determining whether the appointment of a PCO is necessary." *Id.*

19.      Additionally, Judge Bohm argues that courts should put less weight on the cost of a PCO:

> In determining whether to appoint a PCO, the United States Trustee—like the *Alternate Family Care* court—believes that a totality of the circumstances approach is appropriate.  However, the USTP disagrees with the ninth factor set forth by the *Alternate Family Care* court—the cost of a PCO—which unlike the first eight factors, does not relate directly

---

[3]      *See* U.S. Bankruptcy Judge Jeff Bohm & Jennifer Chang, *Proper Protection of Patients in Health Care Businesses In Bankruptcy: Continuing Development and Application of Section 333 of the Bankruptcy Code*, 44 UCC L.J. 1, 7 (2012), attached as Exhibit "A," which contains a thorough discussion of the history and caselaw surrounding Section 333.

> to patient care. According to the UST, the cost of a PCO "should not be a
> controlling criteria for appointment."

*Id.* (citing DeAngelis and Bridenhagen, *The United States Trustee Program Administers BAPCPA's Patient Care Ombudsman Requirements*, 27 Am. Bankr. Inst. J. 14, 44-45 (2008)). Thus, the Congressional intent for the appointment of a PCO is to represent patient interests is not necessarily synonymous with the economic interests of other parties, including debtors and their creditors, a fact that Congress plainly contemplated when it enacted Section 333 as part of BAPCPA. Indeed, a PCO's primary duty is to serve as an advocate for patients, irrespective of the economic impact on the estate. *See* 3 COLLIER ON BANKRUPTCY ¶ 333.01 at 333-3 (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2017).

20.    Ultimately, Judge Bohm persuasively argues that to date, courts have placed too much weight on factors that inaccurately reflect the intention of Congress in enacting Section 333 for the protection of patients:

> Although there are some cases in which a PCO is truly unnecessary, the
> lack of pre-petition patient problems, the presence of state and federal
> oversight, and the cost of a PCO should not automatically excuse the
> appointment of a PCO. As between maximizing life verses maximizing
> distributions to creditors, the former should control.

*Id.*

21.    Here, the Court should refuse to waive the PCO requirement because, placing the appropriate weight on patient protection, a PCO is necessary in these cases. As noted above, the particularly vulnerable population of residents living at the Debtors' facilities and the constant, ongoing nature of the care such elderly residents receive dictate that a PCO should be appointed to further the patient-centric goal of representing such patients' interests set forth in Section 333 of the Bankruptcy Code. And in the instant case, appointment of the State Long-term Care Ombudsman as contemplated by Section 333(a)(2)(B) of the Bankruptcy Code would eliminate

any concerns regarding the cost of the PCO and the impact on the Debtors' reorganization efforts. HHSC asserts that a PCO is necessary for the protection of residents in the Debtors' care under the specific facts of this case, as contemplated by Section 333, and respectfully requests that this Court sustain HHSC's objection to the Debtor's Motion.

## IV.    CONCLUSION

WHEREFORE, the Texas Health and Human Services Commission respectfully requests that the Court deny the Debtors' Motion to Waive Appointment of a Patient Care Ombudsman and instruct the United States Trustee to appoint a patient care ombudsman for these cases.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ J. Casey Roy*
J. CASEY ROY
Texas State Bar No. 00791578
CHARLIE SHELTON
Texas State Bar No. 24079317
Assistant Attorneys General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 936-1409
casey.roy@oag.texas.gov
charlie.shelton@oag.texas.gov

ATTORNEYS FOR THE TEXAS HEALTH AND HUMAN
SERVICES COMMISSION

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on all parties requesting notice in this proceeding and that copies were mailed to the counsel and parties listed below, via first class U.S. Mail, postage prepaid on March 8, 2018.

Remarkable Healthcare of Carrollton, LP
4501 Plano Parkway
Carrollton, TX 75010

***Debtor***

Bryan C. Assink
Mark A. Castillo
Curtis Castillo PC
901 Main St., Ste. 6515
Dallas, TX 75202
bassink@curtislaw.net
mcastillo@curtislaw.net

***Counsel for Debtor***

John Vardeman
Office of the U.S. Trustee
110 N. College Ave., Suite 300
Tyler, TX 75702
John.M.Vardeman@usdoj.gov

***U.S. Trustee***

Annmarie Chiarello
Phillip L. Lamberson
Joseph J. Wielebinski, Jr.
Winstead PC
500 Winstead Building
500 N. Harwood St.
Dallas, TX 75201
achiarello@winstead.com
plamberson@winstead.com
jwielebinski@winstead.com

***Counsel for Comerica Bank***

*/s/ J. Casey Roy*
J. CASEY ROY
Assistant Attorney General

14