Remarkable Healthcare
Disclosure Statement Exhibit D



1086 Teaneck Road * Suite 4D * Teaneck, NJ 07666 * P: (201) 340-6343 * F: (201) 340-6138

*Summary of Indicative Terms and Provisions*
*of Proposed Revolving Loan Financing Facility to Remarkable Healthcare, LLC*
*(For Discussion Purposes Only – Not a Commitment to Lend)*
March 14, 2019

This Summary of Indicative Terms and Provisions (this "*Summary*") summarizes the proposed principal terms of a Revolving Loan Financing Facility (the "Financing") to Remarkable Healthcare, LLC ("Borrower"), as proposed by Alleon Capital Partners, LLC ("Lender"). This Summary is not, is not intended to be, and should not be construed as a commitment to lend, nor should it be construed as an attempt to establish all of the terms and conditions relating to the Financing. It is intended only to be indicative of certain terms and conditions and how the Financing documents might be structured, and it is not intended to preclude negotiations within the general scope of these terms and conditions. The final documentation regarding the Facility will be subject to approval by Borrower, and the Lenders (as hereinafter defined).

**This Term Sheet will expire on March 20, 2019 at 5pm EST.**

**Overview:**

| Borrower | Remarkable Healthcare, LLC and affiliates |
| | 904 Emerald Blvd. |
| | Southlake, TX 76092 |
| Validity Guarantor(s): | Laurie Beth McPike |
| | Jon McPike |
| Financing | First priority senior secured revolving loan to be made to Borrower, as described herein in the section "Description of the Loan" (the "Loan"). |
| Agent | Alleon Capital Partners, LLC. |
| Lender | Alleon Capital Partners, LLC and/or its assignees. |
| Closing Date | Expected to be April 10, 2019 |
| Funding Date | Expected to be April 10, 2019 |
| Maturity Date | Expected to be 36 Months following the Funding Date. |

-1-

*CONFIDENTIAL*

**Description of the Loan:**

| | |
|---|---|
| Accounts Receivable ("AR") | Services furnished by Borrower to a qualifying patient, that is outstanding for less than 180 days, for which such account has not been sold, pledged or assigned, either directly or collaterally, to any other person or entity prior to the date such account is sold to Lender. Lender will consider patient pay after completing its due diligence and the final AR list will be provided at time of closing as an exhibit to the Loan documents. |
| Maximum Amount | $5,000,000 line of credit ("Credit Facility"). |
| Advance Rate | 85% of the Estimated Collectable Value ("ECV") of accounts receivable. The ECV will be determined by Agent using historical averages and industry standards. |
| Purpose/Use of Proceeds | The proceeds of the Loan would be used by Borrower for working capital and to provide a cash payment to existing creditors. |
| Interest Rate | The greater of 14.50% per year or 3 Month Wall Street Journal Prime Rate plus 9.00% |
| Unused Facility Fee | N/A |
| Prepayment Penalty | 3% of the Maximum Amount for year one, 2% of the Maximum Amount for year two, 1% of the Maximum Amount for year three. |
| Collateral | Lender shall receive a first priority valid and enforceable lien and security interest in all AR of the Borrower, both now owned and hereafter acquired and all general intangibles, instruments, documents, and chattel paper associated therewith and proceeds thereof; as well as senior secured lien on any other unrestricted or unencumbered current or fixed assets. |
| Control Account | Borrower will establish a deposit account ("Collections Account") maintained by Borrower at a depository bank ("Collections Account Bank") located in the U.S. Borrower, Lender and Collections Account Bank will enter into a Deposit Account Control Agreement providing that the Collections Account Bank agrees to sweep, on a daily or weekly basis, all funds in Collections Account to a bank account of Lender identified therein. |
| Expense Deposit | Borrower agrees to pay Lender an expense deposit (the "Expense Deposit") in the amount of $20,000 ("Expense Deposit Amount") to reimburse Lender for its actual expenses incurred in connection with the origination, review and approval process, as well as attorneys' fees and expenses incurred in the actual documentation of this transaction ("Approval Process Expenses"). Lender will provide a written accounting of all Approval Process Expenses (which accounting shall be conclusive absent manifest error) to Borrower. That portion of the Expense Deposit equal to the Approval Process Expenses is non-refundable, irrespective of whether the Lender enters into any agreements with Borrower. To the extent the Approval Process Expenses are less than the Expense Deposit Amount, the balance of the Expense Deposit Amount shall be returned to Borrower upon demand. To the extent the Approval Process Expenses are in excess of the Expense Deposit Amount, the balance of the Approval Process Expenses shall be paid by Borrower upon request from Lender or from Loan proceeds, unless this transaction does not close as the direct result of Lender's gross negligence or willful misconduct. |

| | |
|---|---|
| Underwriting Fee | 2% to be paid by Borrower at closing from loan proceeds. |
| Servicing Fee | 0.15% of outstanding loan balance per month. |
| Security | Borrower hereby grants to Lender a security interest in the Collateral to secure its obligations hereunder, subject to bankruptcy court approval. |
| Covenants | Affirmative and negative covenants customary and appropriate for transactions of this nature, including without limitation, the following:<br><br>Affirmative Covenants:<br><br>• Financial covenants (including financial covenants pertaining to Borrower and pertaining to the performance of the Receivables):<br><br>• Preservation of corporate existence, rights (charter and statutory), franchises, permits, licenses and approvals (other than nonmaterial changes and other exceptions to be agreed in the Financing documents); in addition, compliance with customary corporate separateness provisions would be required;<br><br>• Keeping of proper books in accordance with generally accepted accounting principles;<br><br>• Customary financial and other reporting requirements, including a requirement that Borrower provide monthly financial updates; and<br><br>• Other standard covenants of Lender.<br><br>Negative Covenants – Restrictions, subject to Lenders' written consent and customary carve-outs and baskets, on:<br><br>• Liens (other than liens securing the Facility and other permitted liens);<br><br>• Debt, guaranties or other contingent obligations;<br><br>• Unauthorized dispositions of assets;<br><br>• Any mergers, acquisitions, joint ventures, consolidations and other material investments involving Borrower;<br><br>• Sales, transfers and other dispositions of material assets;<br><br>• Dividends and other distributions to stockholders;<br><br>• Repurchasing shares of capital stock, other than pursuant to existing agreements with employees and other shareholders;<br><br>• Prepaying, redeeming or repurchasing subordinated debt;<br><br>• Transactions with affiliates;<br><br>• Material changes to the nature of the core business; and<br><br>• Other standard covenants of Lender |
| Representations and Warranties | Representations and warranties customary and appropriate for transactions of this nature, including, without limitation, representations and warranties as to: (i) corporate status; (ii) corporate power and authority and enforceability; (iii) no violation of, or conflict with, law or organizational documents; (iv) no material |

CONFIDENTIAL

| | |
|---|---|
| | litigation; (v) accuracy and completeness of specified financial statements and no material adverse change; (vi) no required governmental or third party approvals or consents; (vii) valid title to property and assets, free and clear of liens, charges and other encumbrances; (viii) status under Investment Company Act; (ix) ERISA matters; (x) environmental matters; (xi) labor matters; (xii) status and adequacy of insurance; (xiii) status of subsidiaries; (xiv) tax status and payment of taxes; (xv) indebtedness and liens; (xvi) compliance with applicable laws; (xvii) no default. The documents evidencing each sale, assignment, conveyance, contribution and/or transfer of Receivables would also contain customary representations and warranties regarding such Receivables. |
| Conditions | Customary and appropriate for transactions of this nature, including, without limitation, execution and delivery of all Financing documents, receipt of approval from all applicable governmental and judicial authorities and satisfactory results of background checks for key management personnel. |
| Events of Default; Remedies | Events of default under the Financing documents (collectively, "*Events of Default*") and remedies would be customary and appropriate for transactions of this nature. |
| Indemnity | Subject to any additional exceptions agreed in the Financing documents, Borrower will indemnify and hold harmless Agent, Lenders and each of their respective affiliates, officers, directors, and employees, agents and advisors from claims and losses relating to the Financing, except that no such person will be indemnified for its income taxes or for costs, expenses or liabilities to the extent incurred by reason of the gross negligence, bad faith or willful misconduct of such person or any other indemnitee. |
| Waivers and Amendments | Amendments and waivers of the provisions of the Financing documents will require the approval of Lenders including as to (a) reductions of principal, interest or fees, (b) extensions of scheduled maturities or times for payment, and (c) releases of all or substantially all of the collateral securing the Loan or the Back End Payments. |
| Governing Law | The Financing documents shall be prepared by counsel to Agent and shall be governed by the internal laws of the State of New Jersey. |

[*Document continues with signature pages.*]

CONFIDENTIAL

If you are in agreement with the foregoing, kindly indicate your acceptance by executing and delivering a copy of this Summary. As noted above, this Summary is not, and is not intended to be, a binding agreement to provide the Financing. Rather, this Summary is a confirmation of the intention of the parties to proceed with the transactions contemplated herein, subject to the terms and conditions contained herein, and it does not create a binding obligation on the parties hereto. This Summary may be executed in one or more counterparts, all of which, taken together shall constitute one and the same instrument.

Very truly yours,
Alleon Capital Partners, LLC.

By: *Leon Chernyavsky*

Name: Leon Chernyavsky
Title: Managing Partner

CONFIDENTIAL

I hereby acknowledge and agree to the above terms and authorize Lender to obtain credit and background information on myself and my firm(s).

Remarkable Healthcare, LLC

TIN#: 27-1665142

By: *[signature]*

Name: Laurie Beth McPike

Title: President/CEO

Date: 3.14.19

Laurie Beth McPike

SS#: ████

DOB: ████

Individually and as Guarantor: *[signature]*

Date: 3.14.19

Current Address: 904 Emerald Blvd, Southlake, TX  76092

Jon McPike

SS#: ████

DOB: ████

Individually and as Guarantor: *[signature]*

Date: 3.14.19

Current Address: 904 Emerald Blvd, Southlake, TX  76092

CONFIDENTIAL

## PAYMENT INSTRUCTIONS

Alleon's wiring information is as follows:

Signature Bank
360 Hamilton Avenue
White Plains, NY 10606
Routing/ABA: 026013576

Beneficiary:
Alleon Capital Partners, LLC
1086 Teaneck Road, Suite 4D
Teaneck, NJ 07666
Acct No. 1501431199
Ref.: Remarkable Healthcare, LLC